UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ernest Garrett,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Boston Scientific Corporation and Selsa Castillo,<br><br>　　　　　Defendants. | Case No. 0:22-cv-01640-ADM-JFD<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO [14] PLAINTIFF'S MOTION TO REMAND TO STATE COURT** |

Plaintiff Ernest Garrett's ("Plaintiff") Amended Complaint alleges reprisal against both his former employer, Defendant Boston Scientific Corporation ("Defendant BSC"), and the Senior Employee Relations Representative who investigated his complaints of discrimination, Defendant Selsa Castillo ("Defendant Castillo"). The face of Plaintiff's Amended Complaint makes clear that he has no basis to hold Defendant Castillo individually liable for reprisal. Plaintiff does not allege that Defendant Castillo (1) participated in any discrimination; or (2) took any adverse employment action against him at all, much less any that was causally connected to any protected conduct.

Nor can he. Defendant Castillo merely investigated Plaintiff's complaints of discrimination allegedly committed by others. She had no supervisory authority with respect to Plaintiff and had no authority to make any decisions affecting the terms or conditions of Plaintiff's employment. This, of course, is fatal to a reprisal claim under the Minnesota Human Rights Act ("MHRA").

1

The only conceivable reason Plaintiff had to add Defendant Castillo in this case was to destroy the Court's diversity jurisdiction. Indeed, Plaintiff readily admits the decision to amend his Complaint to add Defendant Castillo as an individual defendant stems from Plaintiff "[becoming] aware that Defendant BSC is not a citizen of Minnesota" "[a]s a result of Defendant's removal papers." (Dkt. 16 at 2.) Plaintiff's claims against Defendant Castillo should therefore be dismissed with prejudice, and a motion to dismiss those claims has been filed. *See Block v. Toyota Motor Corp.*, 665 F.3d 944, 947-48 (8th Cir. 2011) (dismissal of individually named defendant is proper upon finding of fraudulent joinder); *Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007) ("[T]he right of an out-of-state defendant to remove a diversity suit to federal court cannot be defeated by a[n improper] joinder of a resident defendant.").

Because Plaintiff cannot maintain a claim under the MHRA against Defendant Castillo and Defendant Castillo was fraudulently joined to this litigation to circumvent diversity jurisdiction, Plaintiff's motion for remand should be denied and this Court should retain jurisdiction.

## FACTUAL BACKGROUND

From 2003 to 2021, Defendant BSC employed Plaintiff as a Maintenance Technician.  (Dkt. 7, Amended Complaint ("Am. Compl.") at ¶¶ 10, 47.) At all times relevant to this matter, Defendant BSC employed Defendant Castillo as a Senior Employee Relations Representative. (*Id.* at ¶ 4.)

A significant part of Defendant Castillo's job responsibilities includes investigating employee complaints, updating employees regarding the status of ongoing

investigations, and generating an investigation report following the conclusion of the investigation. (Declaration of Selsa Castillo ("Castillo Decl.") at ¶ 2.) Defendant Castillo does not, however, make any decisions affecting the terms or conditions of others' employment. (*Id.* at ¶ 3.) In other words, it is not Defendant Castillo's decision whether, following an investigation, BSC terminates anyone's employment or takes any other disciplinary action. (*Id.* at ¶ 3.)

In 2021, Plaintiff made reports of discrimination involving other BSC employees. (Am. Compl. at ¶¶ 29, 30.) At no time did Plaintiff allege that Defendant Castillo discriminated against him. (*See id.*)

BSC investigated Plaintiff's reports, during which time Plaintiff spoke with Defendant Castillo in her role as an Employee Relations Representative several times. (*Id.* at ¶ 30.) During their conversations, Plaintiff provided examples of behavior he observed in the workplace that he believed to be discriminatory. (*See id.* at ¶ 34.) Defendant Castillo asked Plaintiff to keep their conversations confidential. (*Id.* at ¶ 30.) On October 13, 2021, Defendant Castillo informed Plaintiff that "the matter he reported 'has been looked into and . . . any necessary action has been taken.'" (*Id.* at ¶ 35.)

On October 19, 2021, Plaintiff engaged in a verbal altercation with Becky Zirbel, the Director of the New Horizon Academy daycare facility located on Defendant BSC's campus. (*Id.* at ¶¶ 36-39.) The next day, Defendant Castillo and Beth Theriot, BSC's Global Security Manager, called Plaintiff, spoke with him about the incident, and asked that he not return to the daycare facility while BSC investigated. (*Id.* at ¶ 41.) Notwithstanding, on October 21, 2021, Plaintiff returned to the daycare facility. (*Id.* at ¶

3

44.) Later that evening, Plaintiff received a call from Theriot who stated that Zirbel reported Plaintiff's presence at the daycare facility notwithstanding the directive that he not be present, and that he was being placed on a paid leave while BSC investigated. (*Id.* at ¶ 46.)

Approximately one week later, on October 27, 2021, Defendant BSC terminated Plaintiff's employment. (*Id.* at ¶ 47.) Defendant Castillo did not make the decision to terminate Plaintiff's employment. (Castillo Decl. at ¶ 6.)

## LEGAL STANDARD

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A federal district court holds original jurisdiction to hear disputes involving citizens of different states. 28 U.S.C. § 1332(a).

While complete diversity generally must exist between all plaintiffs and all defendants to invoke the court's original jurisdiction, "the right of an out-of-state defendant to remove a diversity suit to federal court 'cannot be defeated by a fraudulent joinder of a resident defendant.'" *See Simpson v. Thomure*, 484 F.3d 1081, 1083 (8th Cir. 2007) (quotations omitted); *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) (citations omitted) ("Joinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal."); *see also Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907) ("Federal courts should not sanction devices intended to prevent a removal to a Federal Court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state

courts, in proper cases, to retain their own jurisdiction."). "Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) ("Thus, a proper review should give paramount consideration to the reasonableness of the basis underlying the state claim."). Put differently, a party who is fraudulently joined to destroy diversity jurisdiction is viewed as having not been joined at all.

To establish fraudulent joinder, a defendant must go beyond demonstrating that the claims should be dismissed under Rule 12(b)(6) and demonstrate that "there exists no reasonable basis in fact and law supporting a claim against [that] defendant[]." *Welk v. GMAC Mortg., LLC*, 850 F.Supp.2d 976 (D. Minn. 2012). Courts may look at evidence outside the pleadings in making this determination. *Id.* (citing *Masepohl v. Am. Tobacco Co., Inc.*, 974 F.Supp. 1245, 1250 (D. Minn. 1997)).

## ARGUMENT

Plaintiff cannot maintain a cause of action against Defendant Castillo for reprisal under the MHRA, Defendant Castillo has been fraudulently joined to destroy diversity jurisdiction in this matter, and this Court's retention of this case is correct.[1]

The MHRA provides that "[i]t is an unfair discriminatory practice for any individual who participated in the alleged discrimination as a perpetrator [or] employer . . . to intentionally engage in any reprisal against any person because that person: (1) opposed a practice forbidden under this chapter[.]" Minn. Stat. § 363A.15(1).

---

[1] Notably, despite amending his Complaint to add Defendant Castillo, Plaintiff still alleges that jurisdiction and venue are proper in this Court. (Am. Compl. at ¶¶ 7, 9.)

To state a claim for reprisal under the MHRA against Defendant Castillo, then, Plaintiff must make two showings: (1) that Defendant Castillo "participated in the alleged discrimination" and (2) that she intentionally engaged in reprisal.

As to the second, a showing of reprisal requires Plaintiff to show that (1) he engaged in statutorily protected activity; (2) Defendant Castillo subjected him to an adverse employment action; and (3) there was a causal connection between the two. *Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013 (8th Cir. 2017); *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 548 (Minn. 2001).

Here, even assuming Minn. Stat. § 363A.15 imposes individual liability against non-supervisory employees like Defendant Castillo (which has not been addressed in Minnesota, *see Arens v. O'Reilly Auto., Inc.*, 875 F.Supp.2d 805 (2012)), Plaintiff cannot make either showing. First, as seen from the face of Plaintiff's Amended Complaint, Defendant Castillo did not "participate[] in the allege discrimination" as required for individual liability under § 363A.16. Rather, Plaintiff alleges solely discrimination by *other* BSC employees. (*See* Am. Compl. at ¶¶ 12-25.)

And second, Plaintiff cannot establish a *prima facie* case of reprisal against Defendant Castillo because Defendant Castillo took no adverse employment action against him. Again, Plaintiff fails to even plead as much. With respect to actions taken by Defendant Castillo, Plaintiff alleges only:

- "Whenever Garrett brought up discrimination issues to Castillo, she asked him to keep the complaints confidential, making him feel like his complaints were not important to BSC." (*Id.*)

6

- "On October 31, 2021, Castillo informed Garrett that the matter he reported 'has been looked into and . . . any necessary action has been taken.'" (*Id.* at ¶ 35.)

- "Garrett received a call from Castillo and Global Security Manager Beth Theriot. Garrett was shocked to learn that Zirbel accused him of lunging at her." (*Id.* at ¶ 40.)

- "After Garrett explained what actually happened, Castillo politely asked him to have other employees do the work at New Horizon, if possible." (*Id.* at ¶ 41.)

- "Later that evening, Garrett received a call from Castillo and Theriot who stated that Zirbel allegedly saw him at the Academy and that he was being placed on a paid leave while BSC investigates the allegations." (*Id.* at ¶ 46.)

Under the MHRA, an adverse employment action is one that is "sufficiently severe such that it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Ewald v. Royal Norwegian Embassy*, 902 F.Supp.2d 1208, 1217 (D. Minn. Oct. 9, 2012) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Normally petty slights, minor annoyances, and simple lack of good manners" will not dissuade a reasonable person from pursuing a claim of retaliation. *Id.* Rather, the plaintiff must show some *tangible* harm flowing from the employer's actions. *See Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir.2003) (negative performance review not adverse employment action when employer did not rely upon review in altering terms of employment); *Jones v. Fitzgerald*, 285 F.3d 705, 714 (8th Cir.2002) (placing negative memorandum in employee's personnel file was not adverse employment action when employer did not review memorandum before disciplining employee).

7

Plainly, investigating Plaintiff's discrimination concerns, asking that he keep their conversations confidential, and informing him that the investigation was complete is not conduct that would dissuade a reasonable person from making a discrimination complaint; it is conduct a reasonable person would *anticipate* following a discrimination complaint.

Similarly, informing Plaintiff that allegations were made against him by a third party and that he would be placed on a paid leave of absence pending an investigation are not actions sufficiently severe or tangible to constitute adverse employment actions under the law. *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012) ("An 'adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.' . . . Placement on paid administrative leave pending an investigation does not meet this standard."). And even if a paid leave of absence *was* an adverse employment action (which it is not), it was not one taken by Defendant Castillo: she neither made the decision to place Garrett on a leave nor communicated that decision to him. (Castillo Decl. at ¶ 6.)

Indeed, the only adverse employment action plausibly pled in the Amended Complaint is the termination of Plaintiff's employment, *and Plaintiff does not allege Defendant Castillo was involved in that decision at all.* (Am. Compl. at ¶ 47 ("On October 27, 2021, Garrett's employment was abruptly terminated").) Nor can he. Defendant Castillo simply investigated Garrett's concerns. She had no authority to make, and did not make, the decision to terminate Plaintiff's employment. (Castillo Decl. at ¶ 7.)

And finally, even if Plaintiff did sufficiently allege that Defendant Castillo took an adverse employment action against him (which he did not), Plaintiff does not allege *a single fact* to support a causal connection between any action allegedly taken by Defendant Castillo and Plaintiff's alleged protected conduct. Indeed, Plaintiff does not so much as allege that Defendant Castillo harbored retaliatory animus toward him because of his protected conduct. And to the extent Plaintiff intends to resort to temporal proximity to make this showing, that, too, fails: Plaintiff last complained to Defendant Castillo on August 9, 2021 and his employment was terminated nearly three months later, on October 27, 2021. (Am. Compl. at ¶¶ 34, 47.) Even ignoring the significant intervening cause (the altercation with the daycare provider) this nearly three-month gap is insufficient for a showing of causal connection. *Lissick v. Andersen Corp.*, 996 F.3d 876 (8th Cir. 2021) ("the interval of two months between the complaint and [the employee's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding [of causation]."); *Halbreg v. Location Services, LLC*, 2022 WL 1004586 (D. Minn. Apr. 4, 2022) ("the three-month gap is too large to infer causation as much under the MHRA").

Because Defendant Castillo did not participate in any discrimination alleged by Plaintiff and did not take any adverse action against Plaintiff at all, much less one causally connected to any protected conduct, there is no basis for liability under the MHRA. For that reason, the Court should deny Plaintiff's Motion for Remand and retain jurisdiction in this matter.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion for Remand and retain jurisdiction of this matter.

**FAEGRE DRINKER BIDDLE & REATH LLP**

Dated: July 29, 2022

/s/ *Terran C. Chambers*
Charles F. Knapp, MN Atty #0220371
Terran C. Chambers, MN Atty #0396415
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
*Chuck.Knapp@FaegreDrinker.com*
*Terran.Chambers@FaegreDrinker.com*

*Attorneys for Defendants Boston Scientific Corporation and Selsa Castillo*

US.351071804.03